# LISTING CONTRACT (SELLER AGENCY CONTRACT)   XLS
## EXCLUSIVE RIGHT TO SELL REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1. Broker (Company) **Re/Max Quality Service, Inc.**   Licensee(s) (Name) **Albert H. Oussoren**
2. 
3. Company Address **1147 Eichelberger St, Hanover, PA**   Direct Phone(s) **(717)632-5111**
4. **17331-1371**   Cell Phone(s) **(717)752-0599**
5. Company Phone **(717)642-5111**   Fax **(717)632-9329**
6. Company Fax **(717)632-9329**   Email **ahoussoren@comcast.net**

7. SELLER **Lawrence Young, BK Trustee for the estate of Zoshua Zortman**
8. 
9. SELLER'S MAILING ADDRESS **CGA Law Firm, 135 N. George Street, York, PA. 17401**
10. 
11. PHONE **(717)843-4900**   FAX **(717)843-9039**
12. E-MAIL **lyoung@cgalaw.com**

13. Seller understands that this Listing Contract is between Broker and Seller.
14. Does Seller have a listing contract for this Property with another broker?   ☐ Yes   ☒ No
15. If yes, explain: _____

16. 1. PROPERTY                                   LISTED PRICE $ **172,500.00**
17. Address **719 Grant Drive**                   **Hanover**          PA   ZIP **17331**
18. Municipality (city, borough, township) **Hanover Boro**
19. County **York**                               School District **Hanover School District**
20. Zoning **Residential**
21. Present Use **Unoccupied**
22. Identification (For example, Tax ID; Parcel #; Lot, Block; Deed Book, Page, Recording Date) **67-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-00-00000**
23. 
24. 2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")
25. (A) No Association of REALTORS® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed and
26. agreed upon the term of this Contract.
27. (B) Starting Date: This Contract starts when signed by Broker and Seller, unless otherwise stated here: _____
28. (C) Ending Date: This Contract ends at 11:59 PM on _____ . By law, the term of a listing contract may not exceed
29. one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automatically
30. 364 days from the Starting Date of this Contract.                                   12/22/21   AHO
31. 3. ~~DUAL AGENCY~~
32. ~~Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent where a~~
33. ~~Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer and~~
34. ~~Seller in the same transaction. All of Broker's Licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer~~
35. ~~and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that Broker is a~~
36. ~~Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.~~
37. 4. DESIGNATED AGENCY
38. Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests
39. of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40. ☐ Designated Agency is not applicable.
41. 5. BROKER'S FEE
42. (A) No Association of REALTORS® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43. will pay Broker.
44. (B) Broker's Fee is **6.000** % of the sale price OR $ **9,900.00** , whichever is greater, AND $ _____ , paid
45. to Broker by Seller as follows:
46. 1. $ _____ of Broker's Fee is earned and due (non-refundable) at signing of this Listing Contract, pay-
47. able to Broker.

48. Broker/Licensee Initials: _AHO_     XLS Page 1 of 6     Seller Initials: __ Trustee

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020
rev. 11/19; rel. 1/20

RE/MAX Quality Service Inc, 1147 Eichelberger St Hanover PA 17331      Phone: 717-752-0599    Fax: 717-632-9329      Lawrence Young
Al Oussoren      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Case 1:21-bk-02405-HWV   Doc 27-3   Filed 01/10/22   Entered 01/10/22 11:27:50   Desc
Exhibit Listing Agreement    Page 1 of 7

49  2. Seller will pay the balance of Broker's Fee if:
50      a. Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's
51         Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR
52      b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing
53         buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller,
54         OR
55      c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
56      d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of
57         failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
58      e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay
59         from any money paid by the government, OR
60      f. A sale occurs after the Ending Date of this Contract IF:
61         (1) The sale occurs within _____ days of the Ending Date, AND
62         (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
63         (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
64  (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If
65      the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment
66      contract.
67  **6. BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
68  If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker
69  __-0-_____ of/from deposit monies.
70  **7. COOPERATION WITH OTHER BROKERS**
71  Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay
72  from Broker's Fee a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
73  (A) ☐ Represents Seller (SUBAGENT). Broker will pay _____ of/from the sale price.
74  (B) ☒ Represents the buyer (BUYER'S AGENT). Broker will pay _____2%_____ of/from the sale price.
75      A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
76  (C) ☐ Does not represent either Seller or a buyer (TRANSACTION LICENSEE).
77      Broker will pay _____ of/from the sale price.
78  **8. DUTIES OF BROKER AND SELLER**
79  (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential
80      buyers. Broker will use reasonable efforts to find a buyer for the Property.
81  (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
82  (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Sell-
83      er's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be
84      referred to Broker.
85  (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral,
86      Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
87  (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Bro-
88      ker's written consent.
89  **9. BROKER'S SERVICE TO BUYER**
90  Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document
91  preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance,
92  construction, repair, or inspection services.
93  **10. BROKER NOT RESPONSIBLE FOR DAMAGES**
94  Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal
95  goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).
96  **11. DEPOSIT MONEY**
97  (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale
98      is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been
99      met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-
100     licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by
101     the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any
102     uncashed check that is received as deposit money until Seller has accepted an offer.
103 (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
104     determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
105     1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
106        agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
107 Broker/Licensee Initials: _____           XLS Page 2 of 6           Seller Initials: _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com         Lawrence Young

Case 1:21-bk-02405-HWV   Doc 27-3   Filed 01/10/22   Entered 01/10/22 11:27:50   Desc
Exhibit Listing Agreement    Page 2 of 7

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES
Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS
Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS
(A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or environmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
1. is a possible danger to those living on the Property, or
2. has a significant, adverse effect on the value of the Property.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

(B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.

(C) If Seller fails to disclose known material defects and/or environmental hazards:
1. Seller will not hold Broker or Licensee(s) responsible in any way;
2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978
The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead In Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to housing built in 1978 or later.

## 16. HOME WARRANTIES
At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECORDINGS ON THE PROPERTY
(A) Seller understands that potential buyers viewing the Property may engage in photography, videography or videotelephony on the Property. Seller should remove any items of a personal nature Seller does not wish to have photographed or recorded, such as family photos, important or confidential paperwork (including any information relating to the listing or communications with Broker or Licensee) and all other personally identifiable information such as birthdates, social security numbers, telephone numbers, etc. Seller is responsible for providing this same notification to any occupants of the Property.

(B) Any person who intentionally intercepts oral communications by electronic or other means without the consent of all parties is guilty of a felony under Pennsylvania law. Seller understands that recording or transmitting audio may result in violation of state or federal wiretapping laws. Seller hereby releases all BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them, and any PERSON, FIRM or CORPORATION who may be liable by or through them, from any claims, lawsuits and actions which may arise from any audio or video recordings occurring in or around the Property.

Broker/Licensee Initials: _____   XLS Page 3 of 6   Seller Initials: _Cly Trustee_
                                                                     Lawrence Young

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

166 **18. RECOVERY FUND**
167 Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment)
168 against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays
169 persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call
170 (717) 783-3658.
171 **19. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA**
172 Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX,
173 DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN,
174 USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION
175 TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or
176 set deposit amounts, or as reasons for any decision relating to the sale of property.
177 **20. TRANSFER OF THIS CONTRACT**
178 (A) Seller agrees that Broker may transfer this Contract to another broker when:
179     1. Broker stops doing business, OR
180     2. Broker forms a new real estate business, OR
181     3. Broker joins his business with another.
182 (B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements
183 of this Contract with the new broker.
184 **21. NO OTHER CONTRACTS**
185 Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the
186 Ending Date of this Contract.
187 **22. CONFLICT OF INTEREST**
188 It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests
189 before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.
190 **23. ENTIRE CONTRACT**
191 This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part
192 of this Contract.
193 **24. CHANGES TO THIS CONTRACT**
194 All changes to this Contract must be in writing and signed by Broker and Seller.
195 **25. MARKETING OF PROPERTY**
196 (A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all
197 media, including print and electronic, photographs and videos, unless otherwise stated here: _____
198
199     1. ☐ Seller does not want the listed Property to be displayed on the Internet.
200        ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
201     2. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches
202        for listings on the Internet will not see information about the listed Property in response to their search.
203 (B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in
204 connection to the open house.
205 (C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as "VOW")
206 or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the right to control
207 some elements of how their property is displayed on a VOW and/or IDX websites.
208 Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
209     ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Sell-
210        er's listing.
211     ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with the
212        Seller's listing.
213 (D) Multiple Listing Services (MLS)
214     ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.
215     ☒ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons. List-
216        ing broker shall communicate to the MLS all of Seller's elections made above.
217 (E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.
218 (F) Other _____
219
220 **26. PUBLICATION OF SALE PRICE**
221 Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the
222 Property.

223 Broker/Licensee Initials: _____  XLS Page 4 of 6  Seller Initials: _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com  Lawrence Young

## 27. COPYRIGHT

In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, world-wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

## 28. FIXTURES AND PERSONAL PROPERTY

(A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. Seller is encouraged to be specific when negotiating what items will be **included or excluded in a sale**.

(B) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Also included: <u>Washer, Dryer, stove/range, refrigerator, freezer, hood vent, microwave, dishwasher.</u>

(C) The following items are not owned by Seller and may be subject to a lease or other financing agreement (e.g., solar panels, windmills, water treatment systems, propane tanks, and satellite dishes): _____

(D) EXCLUDED fixtures and items: _____

## 29. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____

(B) Yearly Property Taxes $ <u>6,397.00</u>    Property Assessed Value $ <u>184,830.00</u>

(C) Is the property preferentially assessed (including a tax abatement)? ☐ Yes ☐ No
If applicable, how many years remain? _____

(D) COA/HOA Name _____ COA/HOA Phone _____
COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
Please explain: _____

(E) Municipality Assessments $ _____

(F) COA/HOA Fees $ _____ ☐ Quarterly ☐ Monthly ☐ Yearly

## 30. TITLE & POSSESSION

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
☐ Oil ☐ Gas ☐ Mineral ☐ Other
If checked, please explain: _____

(C) Seller has:
☐ First mortgage with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Second mortgage with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Home Equity line of credit with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

Broker/Licensee Initials: _[initials]_    XLS Page 5 of 6    Seller Initials: _[initials]_

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Lawrence Young

284 (D) Seller has:
285  ☐ Judgments $ _____        ☐ Past Due Municipal Assessment $ _____
286  ☐ Past Due Property Taxes $ _____   ☐ Past Due COA/HOA Fees $ _____
287  ☐ Federal Tax Liens $ _____    ☐ Past Due COA/HOA Assessments $ _____
288  ☐ State Tax Liens $ _____
289  ☐ Other: _____    $ _____
290 (E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania
291      county, list the county and the Domestic Relations Number or Docket Number: _____

292 **31. BUYER FINANCING**
293 Seller will accept the following arrangements for buyer to pay for the Property:
294 ☒ Cash      ☒ Conventional mortgage      ☒ FHA mortgage      ☒ VA mortgage
295 ☐ Seller's Assist to buyer (if any) $ _____ , or _____ %

296 **32. SPECIAL INSTRUCTIONS**
297 The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special
298 conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

299 **33. SPECIAL CLAUSES**
300 (A) The following are part of this Listing Contract if checked:
301  ☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
302  ☐ Single Agency Addendum (PAR Form SA)
303  ☐ Consumer Services Fee Addendum (PAR Form CSF)
304  ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
305  ☐ Short Sale Addendum (PAR Form SSL)
306  ☐ _____
307  ☐ _____
308 (B) Additional Terms: This listing agreement and any sale of the property is subject to and conditioned upon approval by
309     the United States Bankruptcy Court.
310
311
312 _____ Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

313 _____ Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a
314                 timely manner, if required.

315 _____ Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in
316                 a timely manner, if required.

317 Seller has read the entire Contract before signing. Seller must sign this Contract.

318 Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

319 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
320 of all parties, constitutes acceptance by the parties.

321 This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
322 together shall constitute one and the same Agreement of the Parties.

323 NOTICE BEFORE SIGNING: IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENN-
324 SYLVANIA REAL ESTATE ATTORNEY.

325 SELLER _Lawrence V. Young, Trustee_____  DATE 12/28/2021
         Lawrence Young, BK Trustee for the estate of Zoshua Zortman
326 SELLER _____  DATE _____
327 SELLER _____  DATE _____

328 BROKER (Company Name) Re/Max Quality Service, Inc. _____
329 ACCEPTED ON BEHALF OF BROKER BY _/s/ Albert H. Oussoren_____  DATE 12/21/2021
                                     Albert H. Oussoren

XLS Page 6 of 6

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Lawrence Young

**SELLER'S ESTIMATED COSTS**     SEC

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

1. PROPERTY 719 Grant Drive, Hanover, PA 17331
2. SELLER Lawrence Young, BK Trustee for the estate of Zoshua Zortman
3. BUYER
4. SETTLEMENT DATE _____   PURCHASE PRICE $ 172,500.00

| # | Item | Amount |
|---|------|--------|
| 1. | Broker's Fee | $ 10,350.00 |
| 2. | Preparation of Deed | $ 100.00 |
| 3. | Transfer Tax | $ 1,725.00 |
| 4. | Seller's Assist/Credit to Buyer | $ |
| 5. | Home Warranty | $ |
| 6. | Municipal Certification(s) | $ |
| 7. | Certificate of Resale (Condominium/Homeowner's Association) | $ 100.00 |
| 8. | Settlement Fee | $ |
| 9. | Notary Fees | $ 20.00 |
| 10. | Survey | $ |
| 11. | On-lot Sewage System Pumping | $ |
| 12. | Property Repairs | $ |
| 13. | Tax Certifications | $ 10.00 |
| 14. | Overnight/Express Mail Charges | $ |
| 15. | Domestic Lien Search | $ |
| 16. | "Patriot Act" Search | $ |
| 17. | Other Transaction Fee: Re/Max | $ 495.00 |
| 18. | Other | $ |

ESTIMATED COSTS (subtotal) $ 12,800.00

Adjustments (+/-) (e.g., real estate taxes, association fees, utilities) $

TOTAL ESTIMATED COSTS/ADJUSTMENTS $ 12,800.00

Purchase Price $ 172,500.00

Total Estimated Costs/Adjustments (from above) $ 12,800.00

ESTIMATED PROCEEDS (before loan payoffs) $ 159,700.00

Seller's Estimate of Mortgages, Equity, and Other Loan Balances
(including prepayment penalties), liens, assessments, etc. $

ESTIMATED NET PROCEEDS TO SELLER $ 159,700.00

The estimated proceeds do not take into account any other undisclosed mortgage obligations, liens, assessments, judgments or other obligations levied against the Property or Seller.

Seller understands that the estimated costs stated above are based on the best information available at signing and may be higher or lower at settlement.

Seller understands and has received a copy of these estimated closing costs before signing the Agreement of Sale.

SELLER _Lawrence V. Young, Trustee_ Lawrence Young, BK Trustee for the estate of Zoshua Zortman  DATE 12/28/21
SELLER _____  DATE
SELLER _____  DATE

BROKER (Company Name) Re/Max Quality Service, Inc.
PROVIDED BY (Licensee) _____  DATE 12/22/21
Albert H. Oussoren

Pennsylvania Association of Realtors®   COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2005
12/05
RE/MAX Quality Service Inc, 1147 Eichelberger St Hanover PA 17331   Phone: 717-752-0599  Fax: 717-632-9329  Lawrence Young
Al Oussoren   Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com